UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY



2022 APR -4  P 1:57

| | |
|---|---|
| MARC A. STEPHENS, Plaintiff, | CASE NO. |
| v. | CIVIL COMPLAINT, AND TRIAL BY JURY DEMAND |
| EQUIFAX, INC., EQUIFAX INFORMATION SERVICES, LLC, AND EQUIFAX CONSUMER SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., SYNCHRONY FINANCIAL, a Delaware corporation PAYPAL, INC., PAYPAL HOLDINGS, INC., a Delaware corporation Defendants | |

## INTRODUCTION

1. This is an action arising under the Fair Credit Reporting Act (FCRA), Plaintiff is seeking an injunction, damages, and equitable relief due to violations of FCRA by Defendants, which includes causes of actions for: (1) Defamation of Character, (2) Willful Noncompliance with FCRA, (3) Negligent Noncompliance with FCRA, (4) Common Law Fraud, (5) Breach of Contract, and (6) Intentional Infliction of Emotional Distress against Plaintiffs Marc Stephens.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.CA. § 1391 and § 1343, this Court has subject matter jurisdiction over this action because it involves federal questions arising under the the United States Constitution and 42 U.S.C. § 1983 and § 1985.

3. Venue is proper in this District pursuant to 28 USC § 1391 because Defendants resides, work, and are located in New Jersey, and all acts giving rise to the violation of law complained of occurred in this District.

4. The amount in controversy exceeds the sum of $75,000.00.

## THE PARTIES

5. Plaintiff, Marc A. Stephens, a natural person and citizen of the United States of America is a consumer as defined by the Fair Credit Reporting Act (FCRA), 15 USC §1681a(c) residing in the city of Englewood, New Jersey.

6. Defendant, Synchrony Financial is a consumer financial services company that conducts business within this District, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. Defendant, PayPal, Inc., PayPal Holdings, Inc., operates as a payment processor for online vendors worldwide, and conducts business within this District, 2211 North First Street, San Jose, CA 95131.

8. Defendant, Equifax, Inc., Equifax Information Services, LLC, and Equifax Consumer Services LLC, (hereinafter "Equifax" and included in the term "credit reporting agencies"), is multinational consumer credit reporting agency that conducts business within this District, P.O. Box 740241, Atlanta, GA 30374-0241, 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

9. Defendant, Experian Information Solutions, Inc., (hereinafter "Experian" and included in the term "credit reporting agencies") conducts business in this District, 251 Little Falls Drive, Wilmington, DE 19808.

## STATEMENT OF FACTS

### A. PayPal Breach of Contract against Plaintiff Marc Stephens

10. On December 6, 2020, without permission, Paypal withdrew money from Plaintiff's PayPal banking account, and refunded $515 to an individual by the name of, Clyde Nesbitt, who falsely claimed that there was an Unauthorized transaction, **EXHIBIT 1 (a1-2)**.

11. On February 2, 2021, Plaintiff sent PayPal an email, **EXHIBIT 2 (a3)**, and provided a document showing that Clyde Nesbitt confirmed that he sent the payment to

Plaintiff, **EXHIBIT 3 (a4)**. In addition, Clyde Nesbitt sent the payment to Plaintiff Marc Stephens as a FRIEND / FAMILY transaction. There was no product or service involved.

12. According to PayPal, "friends or family" transactions are **not covered** with Paypal Purchase Protection, as mentioned in #8 below. In addition, the initial friends or family transaction date was conducted on September 17, 2020, and the claim was filed on November 22, 2020, **65 days later,** which is more than **60 days** after the transaction date of the transaction, as mentioned in #10 below:

"What's **not covered** with PayPal Purchase Protection, **EXHIBIT 4 (a5).**

1. Real estate
2. Motorized vehicles
3. Custom-made goods that are significantly not as described
4. Industrial machinery
5. Prepaid cards
6. Items that violate our policies
7. Anything bought in person (not over the internet)
8. **Send Money transactions to friends or family**
9. Disputes filed more than 180 days after the purchase for item not received and significantly not as described claims
10. **Unauthorized transaction claims reported more than 60 days after the transaction date of the transaction**
11. Items that were described accurately by the seller
12. Donations including payments on crowdfunding platforms"

13. After Plaintiff pointed out this error to PayPal via email, PayPal shutdown Plaintiff's PayPal account. Plaintiff was unable to withdraw money from his PayPal account to pay bills. Over $40,000 was initially withheld by Paypal. Than around $1,500 was withheld by Paypal for 6 months.

14. PayPal's User Agreement is contract between PayPal and Customers, such as Plaintiff Marc Stephens, **EXHIBIT 4 (a6)**.

15. On March 26, 2022, PayPal placed a hold on Plaintiff deposits of over $21,000, **EXHIBIT 4 (a7)**. The reason why PayPal hold funds is so that they can invest customer's funds to generate interest revenue. According to PayPal's User Agreement:

> "PayPal is not a bank and does not itself take deposits. You will not receive any interest on the funds held with PayPal. PayPal combines your PayPal funds with the PayPal funds of other PayPal users <u>and invests those funds in liquid investments</u> in accordance with state money transmitter laws. PayPal owns the interest or other earnings on these investments". **EX. 4 (a8).**

**B.   PayPal, without permission, switched Plaintiffs PayPal MasterCard billing to Automatic Pay.**

16. On <u>May 14, 2021</u>, and May 19, 2021, in Plaintiff's E-Trade checking account ending in 9394, Plaintiff was charged a $25 service fee, totaling $50.

17. On <u>May 22, 2021</u>. Plaintiff received an email from his Capital One credit card stating that a payment was returned for $25 on May 16, 2021, **see EXHIBIT 5 (a9)**.   It was returned because E-Trade withdrew a $50 fee from Plaintiff's account, which had a $30 balance to cover Plaintiff's credit card payment.   Plaintiff spoke with an E-Trade representative, and stated that a $375 transaction from Paypal was denied on May 13, 2021. There is no description, or indication, that a transaction was conducted by Paypal in Plaintiff's E-Trade transaction statements.

18. Plaintiff spoke with a representative at Paypal named, Bless, representative #: 1630663.   Bless stated that there is no $375 transaction whatsoever in their Paypal system. The $375 transaction occurred due to PayPal, without permission, switching Plaintiffs billing to automatic pay, which tried to withdraw $375 from Plaintiff E-Trade checking account. This illegal action caused Plaintiff's E-Trade account to charge service fees for insufficient funds.   The Plaintiff never used PayPal's Automatic Pay system to pay bills, and never kept a high balance in his checking to avoid unauthorized withdrawals.

C. **Plaintiff Marc Stephens Disputes Account SYNCB/PPMC on his Credit Report**

19. On August 7, 2021, an article is published titled, "Hundreds of Uber Eats User Records Leaked on Dark Web". **EXHIBIT 6 (a10).** Defendant Synchrony claims that the past due debt is from UberEats. Plaintiff Marc Stephens is the victim of identity theft.

20. On August 23, 2021, Plaintiff Marc Stephens submitted a dispute to Defendant Experian requesting for the original signature on the contract for accounts SYNCB/PPMC, #521853. **EXHIBIT 7 (a11-12).** Credit Reporting Agency, TransUnion DELETED from Plaintiff's credit report account SYNCB/PPMC, #521853. **EXHIBIT 8 (a13).**

21. On November 19, 2021, Plaintiff Marc Stephens noticed that the defendants switched the account number for SYNCB/PPMC, #521853, and created a new fraudulent account on his credit report. So, Plaintiff sent a written online dispute to Defendants requesting for the original signature on the contract, and items purchase, for account SYNCB/PPMC, #3506, **EXHIBIT 9 (a14-15).**

22. November 23, 2021 (a ), Plaintiff Marc Stephens sent a written online dispute to Defendants requesting for the original signature on a contract. **EXHIBIT 10 (a16-17).**

23. On December 7, 2021, Plaintiff Marc Stephens spoke with the creditor Defendant Synchrony Bank fraud department. The fraud department and customer service agreed that there was two separate accounts reporting inaccurate information on Plaintiff's credit reports with Experian and Equifax, **EXHIBIT 11 (a18-19).**

24. On December 14, 2021, Plaintiff Marc Stephens sent a written online dispute to Equifax requesting for the original signature on a contract. **EXHIBIT 12 (a20-21).**

25. On March 1, 2022, Plaintiff sent another dispute to the Defendants requesting for the original signature on a contract for account SYNCB/PPMC. **EXHIBIT 13 (a22-25).**

26. On March 22, 2022, Plaintiff sent another dispute to the Defendants requesting for the original signature on a contract for account SYNCB/PPMC. **EXHIBIT 14 (a26-27).**

**D. The Defendants willfully ignored the Plaintiff Request for the Original Signature.**

27. None of the Defendants sent the Plaintiff a copy of the original signature for account SYNCB/PPMC.

28. Jason, an employee at Synchrony Customer Service, agreed to remove both accounts from Plaintiff credit report, but the accounts were never deleted.

29. Pursuant to Uniform Commercial Code § 3-104, the items discussed on Plaintiff's credit report, SYNCB/PPMC, #521853, and SYNCB/PPMC, #3506, are "negotiable instruments".

30. Pursuant to Uniform Commercial Code § 3-401(a), a person is not liable on an instrument unless (i) the person signed the instrument.

31. There is no proof that the debt listed on Plaintiff Marc Stephens credit report is owed, or created, by Plaintiff.

32. The Defendants Synchrony Financial, Synchrony Bank, PayPal, Inc., PayPal Holdings, Inc., are the furnisher of the information regarding both accounts SYNCB/PPMC, and is therefore under the obligations imposed on furnishers to consumer reporting agencies by the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2.

33. Defendant's Equifax, Inc., Equifax Information Services, LLC, Equifax Consumer Services LLC, and Experian Information Solutions, Inc., are consumer reporting agencies as defined by FCRA, 15 USC §1681a(f).

34. All Defendants failed to employ reasonable procedures to assure the accuracy of Plaintiff Marc Stephens credit report in violation of § 1681e(b), and 1681s-2(b).

35. Defendants are liable under Sections 1681n, 1681o, and 1681s-2(b) of the FCRA for willfully and negligently failing to comply with the requirements pursuant to Sections 1681e(b) and 1681i(a) (inaccurate information negatively reflects upon Plaintiff's repayment history, financial responsibility as a debtor, and credit-worthiness.

### E. A Credit Reporting Agency (CRA) Must Report Information With Maximum Possible Accuracy

36. Under § 1681e(b), a CRA must report information with maximum possible accuracy. Id.; 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."). Maximum possible accuracy signifies that a report may be inaccurate not only when it is patently incorrect, but "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." Schweitzer v. Equifax Info. Sols. LLC, 441 F. App'x 896, 902 (3d Cir. 2011) (quoting Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir.2001))(alterations in original).

37. As such, the Third Circuit has held, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." Schweitzer, 441 F. App'x at 902 (quoting Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 148 (4th Cir. 2008)).

### F. A Credit Reporting Agency (CRA) May Be Required To Verify The Accuracy Of Its Initial Source Of Information And May Incur The Duty To Go Beyond The Original Source

38. For several months, the Defendants willfully ignored Plaintiff Marc Stephens request for the original signature on the contract for both accounts listed on his credit report as SYNCB/PPMC.

39. Defendants Equifax and Experian, willfully refused to verify the accuracy of its initial source of information, and willfully refused to incur the duty to go beyond the original source of information.

40. Under **§ 1681i(a)**, after a consumer disputes information with a CRA, a CRA may be required to "verify the accuracy of its initial source of information," and may incur

the duty "to go beyond the original source" of information. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)).

### G. Defamation of Character Against Plaintiff Marc Stephens By Defendants

41. Defendants are falsely reporting that Plaintiff is 120 days late on accounts SYNCB/PPMC, but the debt has not been proven to be owed by Plaintiff. **EX. 15 (a28)**.

42. The Defendants communicated the false inaccurate statement regarding account, SYNCB/PPMC, to multiple third parties, damaging the reputation of Plaintiff Marc Stephens. **EXHIBIT 16 (a29-33)**.

### H. Inaccurate Reporting of date closed, late payments on Plaintiffs Credit Report

43. The Defendants are reporting that account, SYNCB/PPMC, "last payment" received was on June 1, 2021, and the account was "closed" September 1, 2021, but also state "Date of First Delinquency" was October 01, 2021. If the account last payment was in June 2021, then July, August, September, October, and November 2021 should have late payments shown in the credit report, but it does not, **EXHIBIT 17 (a34)**.

44. On December 7, 2021, the Defendants are reporting the account as 30 days late, **EXHIBIT 18 (a35)**. On December 21, 2021, the account is reporting 60 days late, **EXHIBIT 18 (a36)**.

### CAUSES OF ACTION

45. Plaintiff repeats and reiterates each and every allegation contained in the Statement of Facts above and incorporates each in all Counts.

## FIRST CAUSE OF ACTION
### Defamation of Character
### All Defendants

46. New Jersey Constitution, Article I, Rights and Privilege, #6: Every person may freely speak, write and publish his sentiments on all subjects, **being responsible for the abuse of that right**.

47. Defendants are disseminating false information, and implying to multiple third parties that Plaintiff Marc Stephens is untrustworthy, incompetent, and has committed a crime of moral turpitude of fraud, theft, and Breach of Contract, by intentionally violating the terms of the card agreement by purchasing items, defaulting on payment, and not paying the debt.

48. Defendants are falsely reporting that Plaintiff is 120 days late on accounts SYNCB/PPMC, but the debt has not been proven to be owed by Plaintiff. The defendants willfully refuse to provide the original signature on the contract, which was requested multiple times over several months by Plaintiff. Accusing Plaintiff of fraud, theft, and breach of contract are serious crimes.

49. The elements of a defamation are "'(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1114 (N.J. 2009) (quoting DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004)).

50. Under common law, there are 4 statements that are considered automatically defamatory: (1) accusing someone of a serious crime; (2) a false statement that "tends to injure another in his or her trade, business or profession," (3) lying about someone having some "loathsome disease," (4) false statements about a woman's "unchastity." Anything that falls into one of these 4 categories is called "libel per se" or "slander per se."

51. "Where the person defamed is a private party and the statement involves a private matter, the fault element is satisfied by showing that the person communicated the false statement while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it." Feggans v. Billington, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996). In other words, the person failed to take sufficient care to determine the truth of the statement before uttering it.

52. Each of the libelous and slanderous statements made by Defendants was made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendant uttered these statements willingly and knowing them to be false and unsubstantiated by any reasonable investigation. Even if the Defendant states the facts upon which he bases his opinion, if those facts are incorrect, incomplete or recklessly gathered, or if his assessment of them is erroneous the statement may still imply a false assertion of fact, and the opinion or fair comment privilege will not apply.

53. Not only did Defendants have no reasonable basis to believe these statements, but also had no belief in the truth of the statements and in fact knew the statements to be false. The statements by Defendant were made with malice, and ill will towards the Plaintiff, with a design and intent to injure Plaintiff's good name, reputation, business, credit score, employment, and future employment.

54. Upon information and belief, the Plaintiff alleges that, unless enjoined and restrained by the Court, the Defendant will republish, repeat and continue to disseminate the false statements and the false accusation, all to the continuing injury of the Plaintiff that such continued republication, repetition and dissemination of the defamatory and offensive falsehoods will cause irreparable harm to the Plaintiff by damaging his reputation and adversely affecting his employment efforts as well as his personal relationships.

55. Upon information and belief, the Plaintiff alleges that he lacks an adequate remedy at law insofar as damages will be very difficult to calculate for such on-going injuries. By reason of the foregoing, the Plaintiff is entitled to a permanent injunction enjoining and restraining the Defendants, and any person acting in concert with the Defendants, from republishing, repeating, distributing or otherwise disseminating the false statements and the false accusations to the extent such are found in this Action to be false.

56. A plaintiff need not show special or actual damages (e.g., damages to the plaintiff's reputation, property, business, trade, profession or occupation, including expenditures that resulted from the defamation) if the statement is **defamation per se**. Falsely accusing the plaintiff of theft, and being under criminal investigation for having committed a serious crime is slander and libel per se.

57. Defendants' acts were willful, wanton, malicious, oppressive and done with conscious disregard and deliberate indifference for Plaintiff's rights.   Defendants' policies, practices, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to the Plaintiff.

58. As a direct and proximate result of Defendants failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers, lost investment opportunities, reduction in credit score, and other damages in an amount to be determined by the jury and the Court, but no less than $2,000,000.

59. Defendants' actions were fraudulent, malicious and oppressive.   Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an

amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

## SECOND CAUSE OF ACTION
### Willful Noncompliance with FCRA
### All Defendants

60. Defendants Synchrony Financial, Synchrony Bank, PayPal, Inc., PayPal Holdings, Inc., Equifax, Inc., Equifax Information Services, LLC, Equifax Consumer Services LLC, and Experian Information Solutions, Inc. negligently failed to comply with the requirements of FCRA by :

    (a) failing to comply with the requirements in 15 USC §1681e(b);

    (b) failing to comply with the requirements in 15 USC §1681i;1681s-2(b)

    (c) failing to comply with the requirements in 15 USC §1681b(a); and

    (d) failing to comply with the requirements in 15 USC §1681g.

61. In order to succeed on a **§ 1681e(b)** claim, Plaintiff must establish each of the following four elements: (1) inaccurate information was included in his credit report; (2) the inaccuracy was due to Defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Plaintiff suffered an injury; and (4) Plaintiff injury was caused by the inclusion of the inaccurate entry. Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010).

62. To demonstrate that a re-investigation was unreasonable under the FCRA, Plaintiff must show that (1) his credit file contained inaccurate information, (2) he notified Defendants directly of the inaccurate information, (3) his dispute was not frivolous, ( 4)

Defendants failed to respond to his dispute, and (5) Defendant's failure to respond caused Plaintiff to suffer actual damages. See **15 U.S.C. § 1681i(a)**.

63. Plaintiff currently is unaware of all the facts of this case and may learn through discovery of other violations of the FCRA by these defendants. Plaintiff reserves the right to amend this complaint to add such violations as they become known.

64. As a direct and proximate result of Defendants failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers, lost investment opportunities, reduction in credit score, and other damages in an amount to be determined by the jury and the Court, but no less than $500,000.

65. Defendants' actions were fraudulent, malicious and oppressive. Pursuant to **15 U.S.C. §1681n**, Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

## THIRD CAUSE OF ACTION
Negligent Noncompliance with FCRA
All Defendants

66. Defendants Synchrony Financial, Synchrony Bank, PayPal, Inc., PayPal Holdings, Inc., Equifax, Inc., Equifax Information Services, LLC, Equifax Consumer

Services LLC, and Experian Information Solutions, Inc. negligently failed to comply with the requirements of FCRA by :

  (a) failing to comply with the requirements in 15 USC §1681e(b);

  (b) failing to comply with the requirements in 15 USC §1681i;1681s-2(b)

  (c) failing to comply with the requirements in 15 USC §1681b(a); and

  (d) failing to comply with the requirements in 15 USC §1681g.

67. In order to succeed on a **§ 1681e(b)** claim, Plaintiff must establish each of the following four elements: (1) inaccurate information was included in his credit report; (2) the inaccuracy was due to Defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Plaintiff suffered an injury; and (4) Plaintiff injury was caused by the inclusion of the inaccurate entry. Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010).

68. To demonstrate that a re-investigation was unreasonable under the FCRA, Plaintiff must show that (1) his credit file contained inaccurate information, (2) he notified Defendants directly of the inaccurate information, (3) his dispute was not frivolous, (4) Defendants failed to respond to his dispute, and (5) Defendant's failure to respond caused Plaintiff to suffer actual damages. See **15 U.S.C. § 1681i(a)**.

69. Plaintiff currently is unaware of all the facts of this case and may learn through discovery of other violations of the FCRA by these defendants. Plaintiff reserves the right to amend this complaint to add such violations as they become known.

70. As a direct and proximate result of Defendants failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers,

lost investment opportunities, reduction in credit score, and other damages in an amount to be determined by the jury and the Court, but no less than $500,000.

71. Defendants' actions were fraudulent, malicious and oppressive. Pursuant to **15 U.S.C. U.S.C. §1681o**, Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

**FOURTH CAUSE OF ACTION**
Common Law Fraud
All Defendants

72. The Defendants Synchrony Financial, Synchrony Bank, PayPal, Inc., PayPal Holdings, Inc., are the furnisher of the information, and Defendant's Equifax, Inc., Equifax Information Services, LLC, Equifax Consumer Services LLC, and Experian Information Solutions, Inc., reporting is a clear violation of the **Federal Credit Reporting Act 15 USC 1681s-2 section 623**. This includes (1) Reporting information with actual knowledge of errors, (2) Reporting information after notice and confirmation of errors, and (3) Duty to correct and update information. Furthermore, listing any information to a credit bureau that could be inaccurate or invalidated, or verifying an account as accurate when in fact **there is no proof that it is**. Pursuant to Uniform Commercial Code § 3-104, the items discussed on Plaintiffs credit report, SYNCB/PPMC, are "negotiable instruments". Pursuant to Uniform Commercial Code § 3-401(a), a person is **not liable** on an instrument unless (i) the person signed the instrument. There is no proof that the debt listed on Plaintiff Marc Stephens credit report is owed, or created, by Plaintiff.

73. On multiple occasions, the Defendant Synchrony and PayPal made multiple phone calls, and sent bill statements demanding and trying to fraudulently induce Plaintiff Marc Stephens into paying a debt which they knew was not his.   Plaintiff requested for 7 months for the Defendants to provide proof of the original signature regarding the debt, and they refused to provide the evidence.   Jason, an employee at Synchrony Customer Service, agreed to delete both accounts from Plaintiff's credit report, but the accounts were never deleted.

74. The burden of proof is on the plaintiff to establish by clear and convincing evidence each of the following elements.   In New Jersey, the elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 148 N.J. 582, 610 (N.J. 1997); accord Kuzian v. Electrolux Home Prods., Inc., 937 F. Supp. 2d 599, 614-615 (D.N.J. 2013).

75. The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 – 56:8-184 (the "Consumer Fraud Act" or the "NJCFA"), renders it unlawful for any person to "use or employ[] . . . any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation," or to "knowing[ly] conceal[], suppress[], or omi[t] . . . any material fact with intent that others rely upon . . . [that] concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." NJCFA § 2, N.J.S.A. § 56:8-2.

76. To maintain a claim under the Consumer Fraud Act, a private litigant must establish "(1) unlawful conduct by the defendants, (2) an ascertainable loss on the part of the plaintiff, and (3) a causal relationship between the defendant's unlawful conduct and the

plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 367 N.J. Super. 8, 12-13 (N.J. App. Div. 2003); see also NJCFA § 7, N.J.S.A. § 56:8-19.

77. As a direct and proximate result of Defendants failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers, lost investment opportunities, reduction in credit score, and other damages in an amount to be determined by the jury and the Court, but no less than $500,000.

78. Defendants' actions were fraudulent, malicious and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

### FIFTH CAUSE OF ACTION
Breach of Contract and
Implied Covenant of Good Faith and Fair Dealing
All Defendants

79. The elements of a breach of contract claim under New Jersey law are that (1) "a contract existed between the parties"; (2) the defendant "breached a duty imposed by the contract," (3) the plaintiff "performed its obligations under the contract," and (4) the plaintiff "was damaged as a result" of the breach.

80. Plaintiff opened a Paypal account using his email, "marcanthonystephens1@gmail.com". According to Paypal, "This user agreement is a contract between you and PayPal, Inc." "By opening and using a PayPal account, you agree to comply with all of the terms and conditions of this user agreement". PayPal withdraw $515 from Plaintiff account without permission in breach of the User Agreement, and PayPal Purchase Protection. Experian, Equifax, refused to conduct a thorough investigation in violation of FCRA, and Synchrony agreed to Delete the item from Plaintiffs credit report, but never deleted the items. Plaintiff was damaged by Defendants breach of fiduciary duties, and the implied covenant of good faith and fair dealing.

81. As a direct and proximate result of Defendants Breach of Contract, and breach of fiduciary duties, and the implied covenant of good faith and fair dealing, plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers, lost investment opportunities, reduction in credit score, inability to pay bills, and other damages in an amount to be determined by the jury and the Court, but no less than $500,000.

82. Defendants' actions were fraudulent, malicious and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

## SIXTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
All Defendants

83. Under New Jersey law, to establish a prima facie claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." Witherspoon v. Rent–A–Center, Inc., 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing Buckley v. Trenton Savs. Fund Soc'y, 544 A.2d 857 (N.J. 1988)). Despite Plaintiff sending multiple disputes to remove the fraudulent account, and Defendants agreeing that its reporting in error, Defendants intentionally kept the false accounts, SYNCB/PPMC, on Plaintiff's credit report, reported the debt to multiple third parties defaming Plaintiff, and reported multiple late payments reducing the plaintiff's credit score from 820 to 680.

84. As a direct and proximate result of Defendants willful refusal to investigate and provide an original signature to prove the debt, Plaintiff has suffered, and continues to suffer, injury to his reputation including suffering physical, psychological and emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, mental and emotional anguish, actual damages including lost opportunity to receive credit, lost opportunities to accept job offers, lost investment opportunities, reduction in credit score, and other damages in an amount to be determined by the jury and the Court, but no less than $500,000.

85. Defendants' actions were fraudulent, malicious and oppressive.

**WHEREFORE**, Plaintiff Stephens demands judgment against Defendants jointly, severally and/or individually for: (a) compensatory and punitive damages; (b) attorney fees, filing fees and cost of suit; and (c) any further relief which the Court may deem equitable and just.

## JURY DEMAND

Plaintiffs hereby demands trial by jury on all issues against All Defendants

## CERTIFICATION PURSUANT TO R 4:5-1

Plaintiffs hereby certify that the matter in controversy is not the subject of any other action, pending in any court or of a pending arbitration proceeding, nor is any such action or arbitration proceeding presently contemplated.

Ss// Marc Stephens

Marc Stephens
Plaintiff, pro se